# Waugh's Appeal.

1. Provisions in a will were: "I give to my sons John and James my dwelling plantation, * * * with about thirty acres adjoining, * * * to be divided, &c. * * * If any of them should die without lawful heir, I allow the survivor to inherit the whole. The land I have bequeathed to each of them, I allow them to hold by virtue of this my will to them and their heirs and assigns for ever." He also charged legacies on the land: *Held*, 1. That the sons took estates in fee; 2. The clause, "if any of them should die without lawful heir, the survivor to inherit the whole," meant only to provide against lapse.

2. Another provision was: "If James should not choose to build on the part of the land allotted to him, and chooses to sell, I allow him to let his brother John have it at $2000, besides what he was to pay out of it." In 1852 James sold his share to John for $3500, and John afterwards sold part for $1500. In 1873, at the request of John, James released him from all claims under his father's will, on condition that John should convey *all* the

[Waugh's Appeal.]

land to James's children, they to take possession at John's death, and to give him an obligation for $2000, payable after his death. John died unmarried and without issue in 1874: *Held*, that the share of the land which had belonged to James was not subject to collateral inheritance tax; that John's own share was subject to the tax.

3. The conveyance of 1873 was a rescission of the sale by James in 1852, and was the carrying out of the will of the father as to selling for $2000.

May 6th 1875. Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson and Woodward, JJ.

Appeal from the Orphans' Court of *Adams county:* Of May Term 1875, No. 71.

The appeal in this case was by John B. Waugh, William P. Waugh, Flora A. Dufphey, late Waugh, and Mary E. Waugh, from the decree of the Orphans' Court in relation to the assessment of the collateral inheritance tax on lands held by them, late the estate of John Waugh, deceased.

The land on which the tax was assessed was formerly the property of William Waugh, of Adams county, deceased, who died about October 1823, having made a will dated November 27th 1817, and proved October 28th 1823.

The will directed that his wife and family should live together on his "dwelling plantation" during her life, the plantation to be farmed by his two sons John and James. He gave his sons what they could make "off" the plantation after supporting the family; he gave to his wife certain privileges and 20*l.* yearly during her life, and 100*l.* absolutely; he gave to his two sons also the farming utensils, &c., on the plantation.

He made a number of bequests and devises to his children other than John and James, and to his grandchildren; several of the bequests were charged on the real estate. He then proceeded:—

" I give and bequeath to my two sons John and James all my dwelling plantation, consisting of all my land in Carrol's Delight, with about thirty acres adjoining, including the little sugar-loaf hill; to be divided in the following manner, viz. (setting forth the boundaries): the north side of said division with the building I allow to John, and the south to James, together with the land purchased from William Hart on the west side of the upper end of the long lane, except the part which is in law; which, if recovered, I allow to go into my personal property, all but two acres on the upper end of it. Said division is not to take place in full till perhaps the beginning of the year 1820. Should my wife be then living she is to be supported, particularly by John. James may make preparation for building, if he chooses, previous to the aforementioned time, and to have the benefit of the old barn till he builds one, and John to assist him in building. I allow, when they make a full division as above directed, that the farming utensils, tools, &c., be divided between John and James. I allow my moun-

tain land on Bashan to be divided between them, as marked on the draft. * * * I allow my mountain land on the waters of Tom's creek, to be accounted as personal property and to be sold by my executors as soon as it can be done to advantage. I allow to my son John 100*l.* out of my personal property one year after my decease; I also allow to my son James $200 annent building.

"I allow and it is my will that when the divide of my plantation is made, as before directed, that my son John shall pay $1200 annent his share of the land, to be paid in annual payments of $200 a year, and likewise to assist in supporting any of the family that may wish to live together on said plantation.

"I allow and my will is that my son James shall pay annent his share or divide of the land $1000, to be paid in annual payments of $200 a year, the first in one year after he gets possession. And if my estate should amount to more than the specifiet sums mentioned, then I allow the whole of such overplus to be equally divided between my two sons John and James. But if there is not a sufficiency to pay the specifiet sums, then and in that case I allow my said two sons John and James to make up said deficiency equally over and above what they have to pay out of the land.

"It is my will that if any of the legatees mentioned in this will should die before they receive such legacy to them bequeathed, or without lawful heir of their body, that in that case such bequest shall be equally divided amongst the surviving heirs, viz.: * * * If James should not choose to build on the part of the land allotted to him and chooses to sell, I allow him to let his brother John have it at $2000, besides what he was to pay out of it, or if any of them should die without lawful heir I allow the survivor to inherit the whole. The land that I have bequeathed to each of them I allow them to hold by virtue of this my last will and testament to them and their heirs and assigns for ever."

On the 14th of June 1852, James Waugh, for the consideration of $3500, conveyed to his brother John Waugh in fee certain tracts of land in Hamiltonban township, Adams county, "it being all my right, title and interest in the land bequeathed to me by my father William Waugh by will, all of which lands are fully described in said will." Subsequently John Waugh conveyed to John Gelbaugh eighteen acres from the mansion tract for $1500.

On the 1st of July 1873, James Waugh made a power of attorney to his son, James B. Waugh, "To make, &c., to his brother John Waugh, a deed, &c., releasing all my right, &c., to a certain parcel of land in Hamiltonban township, Adams county, willed by my father in the year 1817 to John Waugh and myself, and allowing me to sell my part of the land to John for $2000, * * * and my brother John Waugh having written to me that he was in feeble health and wished to make a disposition of his property before his death, and that he desired me or my children to have the entire

lands on the payment back to him of the sum of $2000." He then authorized his attorney to transfer " all my interest, right and claims upon the said lands back to said John Waugh for ever, upon the following express conditions, viz. : that my brother John will make to my four children, viz. : W. P. Waugh, John B. Waugh, Flora A. Dufphey and Mary E. Waugh, a good warrantable deed for the whole of said land, with possession at his death, and accept of the joint note or obligation for the sum of $2000, made payable to him or his estate two years after his death, being the amount claimed by him for the amount paid me for my interest in my part of the land sold him, a refunding of said purchase-money." * * *

On the 7th of July 1873, James Waugh, by his attorney John B. Waugh, under the above power, made a release as follows :—

"For and in consideration of the fact that John Waugh, of, &c., has made or executed a deed to certain tracts or parcels of land in Adams county, Pennsylvania, to W. P. Waugh, J. B. Waugh, Flora A. Dufphey and Mary E. Waugh, I do hereby sell, transfer and convey, and for ever relinquish, any right or title I now have, or which I may hereafter have by reason of the death of my brother John Waugh in said lands."

On the 7th of July 1873, John Waugh, by deed of that date, in consideration of $2000, conveyed in fee to the four children of James Waugh, mentioned in the power of attorney, " all that hereafter described tract or parcel of land, situate, lying and being in the county of Adams and state of Pennsylvania: No. 1, Mansion tract, containing 300 acres, more or less, and the Mountain tract, containing 120 acres, more or less, adjoining, &c. ; it being all the same lands that William Waugh willed to James Waugh and the said John Waugh. * * * The said John Waugh reserves off the mansion tract all the land lying south of the Gettysburg public road, he having sold it to Gelbaugh, containing 18 acres, more or less. Possession of all said premises to be given at the death of the said John Waugh, together," &c. * * *

The consideration was paid by a note of James Waugh's children to John Waugh for $2000, payable in two years after John's death.

John Waugh died on the mansion place, in Adams county, in April 1874, unmarried and without issue, but leaving a will, which was proved on the 28th of the same month, and letters testamentary granted to James H. Marshall and Joseph Killinger, the executors named in it.

A collateral appraisement of John Waugh's estate was made; in it was included the $2000 note of James Waugh's four children "less discount;" and

[Waugh's Appeal.]

" Home farm, 300 acres, sold to W. P. Waugh, J. B.
   Waugh, Flora A. Dufphey, and Mary E. Waugh,
   title only to take effect at the death of the grantor,
   at $80 per acre,     .     .     .     .     .     .     . $24,000
" Mountain tract containing 120 acres, conveyed as above
   to W. P. Waugh, J. B. Waugh, Flora A. Dufphey
   and Mary E. Waugh, at $30 per acre     .     .     .   3,600
                                                         ─────────
                                                         $27,600"

W. P. Waugh and the other three children of James, appealed
from the appraisement for the reasons :—

    1. That valuation of the lands was too high.
    2. That the Home Farm and Mountain Land were not John
Waugh's estate at the time of his death, and therefore not subject
to collateral inheritance taxation.
    3. The Home Farm and Mountain Land were at John Waugh's
death the property of William P. Waugh, John B. Waugh, Mary
E. Waugh and Flora A. Dufphey, under the will of William Waugh,
and the deed made in pursuance of the will by James Waugh and
John Waugh.

The Orphans' Court (Wills, P. J.) held, that the land was subject
to the collateral inheritance tax ; that the assessment was not too
high, and dismissed the appeal.

The appellants below appealed to the Supreme Court, and
assigned this decree of the Orphans' Court for error.

*R. G. McCreary*, for appellants.—By the will of William
Waugh, his sons John and James took the land in tail with cross
remainders in fee : Haines *v.* Witmer, 2 Yeates 400 ; Braden *v.*
Cannon, 12 Harris 171 ; Baskin's Appeal, 3 Barr 304 ; Porter *v.*
Bradley, 3 Term R. 488 ; Wall *v.* McGuire, 12 Harris 248 ;
Hatch *v.* Bluck, 6 Taunt. 485 ; Simpson *v.* Ashworth, 6 Beav.
412.    The deed of John Waugh to the appellants must be regarded
in connection with the power of attorney and release of James
Waugh to John.    They constitute one transaction, and operate
merely as a transfer by James Waugh of his estate in remainder to
his children.    The deed transferred no beneficial estate from him.
The appellants held under the will of William Waugh, through
James Waugh; it is not subject to tax as the estate of the grantee
of the power : Commonwealth *v.* Duffield, 2 Jones 277 ; Common-
wealth *v.* Williams, 1 Harris 29.    The conveyance by John Waugh
to the appellants of that part of the land originally devised to
James Waugh, was upon a fair and valuable consideration paid
by them, was duly executed, delivered and recorded in the life-
time of the grantor, and is not within the Act of 7th April
1826.    The deed took affect upon delivery and vested in the

[Waugh's Appeal.]

appellants a fee simple title with legal seisin in this portion of the farm: Act 28th May 1715, sect. 5, 1 Sm. Laws 95, 1 Br. Purd. 472, pl. 74; McKee *v.* Pfout, 3 Dallas 486; Dunwoodie *v.* Reed, 3 S. & R. 445; Stinger *v.* Commonwealth, 2 Casey 422, 429.

*W. A. Duncan,* for Commonwealth, appellee.—The concluding words, "to them, their heirs and assigns for ever" passed a fee: Middleswarth *v.* Collins, 1 Phila. R. 139; Fetrow's Estate, 8 P. F. Smith 424; Brisben's Appeal, 20 Id. 405; France's Estate, 25 Id. 225. Where there are two repugnant clauses in a will the latter shall stand: 2 Blackstone 308; 1 Jarm. on Wills 411–413; Lewis's Estate, 3 Whart. 162; German *v.* German, 3 Casey 118; Stickles's Appeal, 5 Id. 236; Mutter's Estate, 2 Wright 321; Newbold *v.* Boone, 2 P. F. Smith 167; Shutt *v.* Rambo, 7 Id. 149. The recognition by testator of the power of James to sell to John destroys the effect of "survivor to inherit the whole:" Karker's Appeal, 10 P. F. Smith 141. "Heirs" not necessary to create a fee: Caldwell *v.* Ferguson, 2 Yeates 250, 380; French *v.* McIlhenny, 2 Binn. 13; Morrison *v.* Semple, 6 Id. 94; Hall *v.* Dickinson, 2 Phila. 123; Schriver *v.* Meyer, 7 Harris 87; Wood *v.* Hills, 7 Id. 513; Act April 8th 1833, sect. 10, Pamph. L. 16, 2 Br. Purd. 1475, pl. 10; Geyer *v.* Wentzel, 18 P. F. Smith 84; Jauretche *v.* Proctor, 12 Wright 466; Lobach's Case, 6 Watts 171; Hoover *v.* Hoover, 5 Barr 355; Fulton *v.* Moore, 1 Casey 474; Schoonmaker *v.* Stockton, 1 Wright 461. The deed did not take effect upon execution and delivery: Turner *v.* Scott, 1 P. F. Smith 126: Redfield on Wills 170; Gage *v.* Gage, 12 N. H. 731; Ingram *v.* Porter, 4 McCord 198; Harbergham *v.* Vincent, 2 Ves. Jr. 204; Rose *v.* Quirk, 6 Casey 225. The execution of the deed by John Waugh, just before his death, to his brother's children, is within the very words of the act relating to collateral inheritance tax: Act of April 1st 1826, sect. 1, 9 Sm. Laws 148, 1 Br. Purd. 214, pl. 1; Stinger *v.* Commonwealth, 2 Casey 422; Wright's Appeal, 2 Wright 507.

Mr. Justice SHARSWOOD delivered the opinion of the court, October 12th 1875.

The learned judge below did not consider in this opinion the question, what estate John and James took under the will of their father, William Waugh, in the mansion farm, and woodlands on Bashan. Perhaps it was not presented as it has been in the printed and oral argument in this court. It has been contended, very plausibly, that the brothers took estates tail with cross remainders in fee, so that upon the death of John Waugh, without issue, his original portion would have passed to James Waugh. If that were so, that portion would clearly not be subject to collateral inheritance tax as the estate of John Waugh.

We are of opinion, however, that the brothers took estates in fee, and that the direction "if any of them should die without lawful heir the survivor to inherit the whole," meant only to provide against lapse. The direction in question is followed by a devise to them in technical and unqualified terms "to hold by virtue of this my last will and testament to them and their heirs and assigns for ever." The previous provision that "if James should not choose to build on the part of the land allotted to him, and chooses to sell, I allow him to let his brother John have it at two thousand dollars, besides what he was to pay out of it," indicates pretty distinctly that the idea of the testator was that each of his sons was to have an estate which they could sell. The collocation of the clause in question before the devise in fee, though not conclusive, aids this construction. When a reasonable doubt exists, the inclination of the courts is to fall back on this construction, because it gives effect to every word and reconciles inconsistencies : Fahrney *v.* Holsinger, 15 P. F. Smith 394, and cases there cited.

James and John being thus tenants in fee, James by deed June 14th 1852, conveyed his interest to John for the consideration of $3500, and John subsequently sold a portion of it to John Gelbaugh for $1500. This left $2000 as the amount John had paid for what he continued to hold. Then James, by his attorney in fact, on the 7th day of July 1873, released to John whatever interest he might have under his father's will, upon condition that John would make to his four children (the appellant's) a deed for the whole of the land, with possession at his death, and accept of their joint note or obligation for the sum of $2000, made payable to him or his estate two years after his death, being the amount claimed by him for the sum paid James for his interest in his part of the land sold him, a refunding of said purchase-money. This arrangement was consummated on the same day by a deed from John Waugh to the appellants for all the lands, "possession of all said premises to be given at the death of said John Waugh." As to the original share of John, it is very clear that it is subject to the tax, being within the express provision of the Act of April 7th 1826, 9 Sm. Laws 146, as an interest "transferred by deed, grant, bargain or sale, made or intended to take in possession or enjoyment after the death of the grantor or bargainor." But as to the share or portion of James Waugh, it appears to us to present a different case. Substantially it was agreed that the appellants should purchase back that share after John's death by refunding to his estate what he had paid their father for it. Their notes for the $2000 have gone into the inventory of the personal estate, which is, of course, to pay the tax. Part of the consideration undoubtedly was, that John should convey the entire estate to his nephews and nieces. But can it be said that this share was John's at the time of his death, or that it was within the spirit of

[Waugh's Appeal.]

the proviso? It was in effect a rescission of the sale of 1852, which was evidently a mere carrying out of the will of William, and an agreement by John to give his own original share to the appellants. Had the appellants been strangers—not collaterals—it would have been a perfectly valid transaction founded upon valuable consideration. It is not found or pretended that the object was to evade the tax. The note given for the transfer excluded such a pretension. Had James continued the owner under his father's will it would have passed to the appellants on his death, and there could have been no claim upon it by the Commonwealth for the tax.

Decree reversed, and now it is ordered and decreed that the appeal by John B. Waugh, William P. Waugh, Mary E. Waugh and Flora B. Dufphey, from the assessment on the home farm and mountain land, valued at $27,600, be sustained so far as regards so much of the said land as was the property of James Waugh, under the will of William Waugh, and that the record may be remitted that an order be made by the Orphans' Court for a new assessment to be made according to the principles of this opinion. Each party to pay his own costs on this appeal.